**EXHIBIT 1**

Filing # 258546738 E-Filed 10/05/2026 10:50:03 PM

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.

JOHNSON & JOHNSON,

Plaintiff,

v.

DEAN OMAR BRANHAM SHIRLEY, LLP,

Defendant.

---

## COMPLAINT FOR PURE BILL OF DISCOVERY

Plaintiff, Johnson & Johnson ("J&J"), files this Complaint for a pure bill of discovery to obtain information from Defendant Dean Omar Branham Shirley, LLP ("DOBS") regarding lobbying activities undertaken by, on behalf of, or for the benefit of DOBS and its various personal injury clients, relating to the regulation of talc used in cosmetics and consumer products. Those activities and the information concerning them are material and necessary to Plaintiff's defense in pending and anticipated litigation, and the information is exclusively within DOBS's possession and unavailable through ordinary discovery mechanisms. Plaintiff therefore states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this pure bill of discovery to compel Defendant to disclose information regarding its efforts to lobby, influence, advocate for or against, or otherwise attempt to affect legislation, regulation, rulemaking, or agency action relating to talc used in cosmetics or consumer products, including but not limited to efforts directed at federal, state, or local government officials, legislators, regulators, or agencies, as well as any information in its

possession regarding such efforts undertaken on behalf of it, its various talc litigation clients, or other law firms representing plaintiffs in talcum powder litigation.

**JURISDICTION, PARTIES & VENUE**

2. This Court has jurisdiction over the subject matter of this action pursuant to section 26.012(2)(c), Florida Statutes, establishing that circuit courts have exclusive jurisdiction "in all cases in equity."

3. Defendant DOBS is a limited liability partnership with its principal place of business located in Dallas, Texas. DOBS is a law firm involved in personal injury litigation, including nationwide talc and asbestos litigation. It provides legal representation to tort plaintiffs, including multiple Florida residents with lawsuits pending in the circuit courts of Florida, alleging that they developed various cancers, including mesothelioma, as a result of their exposure to asbestos allegedly contained in talc-based cosmetic powder products.

4. This Court has specific personal jurisdiction over DOBS pursuant to section 48.193(1)(a), Florida Statutes. DOBS is subject to jurisdiction under section 48.193(1)(a)1. because it is "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state." Specifically, DOBS actively solicits and represents Florida residents as clients in talc and asbestos personal injury litigation, maintains an ongoing attorney-client relationship with multiple Florida residents, files pleadings and makes appearances in Florida courts on a regular and continuing basis, and advertises its legal services to Florida residents through its website and other channels. DOBS represents plaintiffs in talc cases against J&J currently pending in Florida, including *Renwick v. Johnson & Johnson et al.*, Case No. 23-011345-CA-01 (Miami-Dade County), and *Fisher v. Johnson & Johnson et al.*, Case No. CACE-24-005907-CA-24 (Broward County) (collectively, the "Florida Litigation"). The exercise of jurisdiction comports with

constitutional due process because DOBS has purposefully availed itself of the privilege of conducting activities in Florida, the claims asserted in this action arise out of or relate to DOBS's Florida contacts, and the exercise of jurisdiction is reasonable given DOBS's systematic litigation presence in this forum.

5. Plaintiff J&J is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey. J&J is a holding company that, through its subsidiaries, develops, manufactures, and sells products in the United States, including Florida. J&J is a named defendant in talc and asbestos personal injury litigation nationwide, including in South Carolina and Florida.

6. Venue is proper in this Court because "a nonresident over whom personal jurisdiction can be obtained consistent with constitutional considerations can, at a plaintiff's election, be sued in ***any*** county in this state..." *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 642 (Fla. 4th DCA 2013) (emphasis added) (internal citations omitted).

## BACKGROUND

### I. Talc Litigation

7. DOBS is a law firm that represents plaintiffs against J&J and other defendants in talc litigation in various jurisdictions throughout the United States, including cases filed in this state as well as the South Carolina talc-mesothelioma cancer multi-county litigation. In South Carolina, DOBS represents plaintiffs in cases pending before the Court of Common Pleas for the Fifth Judicial Circuit, including *Barnett v. Johnson & Johnson, et al.*, Case No. 2026-CP-40-01257, and *Gerken v. Avon Products, Inc., et al.*, Case No. 2023-CP-40-06111 (the "South Carolina Litigation").

8. On August 17, 2026, DOBS served Rule 30(b)(6) deposition notices and accompanying document requests on J&J and its co-defendant Kenvue Inc. ("Kenvue") in the South Carolina Litigation. It served amended notices on September 2, 2026. The notices seek corporate representative testimony and documents regarding, among other things, J&J's communications with the Department of Health & Human Services ("HHS"), the Food and Drug Administration ("FDA"), and the Executive Branch, as well as with trade organizations, concerning the Consolidated Appropriations Act, 2023; the Modernization of Cosmetics Regulation Act of 2022 ("MoCRA"); the FDA's proposed and since-withdrawn asbestos testing rule; the FDA's May 20, 2025 Expert Panel on Talc; and European health agencies' assessments of a potential ban on talc. J&J had already produced a corporate representative, Dr. Edwin Kuffner, who testified on regulatory topics, including the Expert Panel on Talc, at a two-day deposition in *Gerken* on September 10 and 11, 2025. On September 2, 2026, J&J and Kenvue moved to quash the notices and for a protective order, and on September 16, 2026, J&J served written objections to the amended deposition notices. On October 2, 2026, the court denied the motion as to the lobbying and regulatory topics. It ordered J&J and Kenvue to produce responsive documents by October 14, 2026, and to produce a prepared Rule 30(b)(6) witness on October 23 or October 29, 2026. DOBS's notices expressly reserve the right to use the resulting testimony and exhibits "for any purpose, including at trial in this and in any subsequent matter." On information and belief, DOBS intends to use this discovery at trial, not only in South Carolina but also in litigation brought by its clients in other jurisdictions, including the Florida Litigation, to portray Plaintiff as seeking to suppress or manipulate governmental oversight of talc-based cosmetic products.

## II. DOBS's Lobbying Efforts Relating To The Cosmetics Industry

9. On information and belief, DOBS, either itself or in coordination with third parties, has engaged in lobbying efforts to influence federal legislative and regulatory actions, including the Consolidated Appropriations Act, 2023; MoCRA; the FDA's proposed and since-withdrawn rule entitled "Testing Methods for Detecting and Identifying Asbestos in Talc-Containing Cosmetic Products" (the "Proposed Rule"); and the FDA's May 20, 2025 event titled "Expert Panel on Talc." These are the same legislative and regulatory matters on which DOBS has compelled discovery from J&J in the South Carolina Litigation.

10. In December 2022, Congress passed the Consolidated Appropriations Act, 2023, an omnibus spending and appropriations bill. *See* Pub. L. No. 117-328, 136 Stat. 4459 (2022). Congress enacted MoCRA as part of that legislation. MoCRA directs the FDA to issue regulations establishing standardized testing methods for detecting and identifying asbestos in talc-containing cosmetic products.

11. On December 27, 2024, the FDA published the Proposed Rule, which purported to establish a methodology for testing cosmetic talc for asbestos. *See* 89 Fed. Reg. 105,490 (Dec. 27, 2024). The Proposed Rule was never finalized, and on November 28, 2025, the FDA formally withdrew it. *See* 90 Fed. Reg. 54,603 (Nov. 28, 2025).

12. On May 20, 2025, the FDA held an event titled "Expert Panel on Talc" (the "Roundtable"). At the Roundtable, FDA Commissioner Martin Makary convened nine individuals characterized as experts, several of whom are paid litigation consultants retained by plaintiffs' counsel in pending talc cases across the country. The Roundtable did not include any representatives of the defense or the regulated industry and offered no opportunity for public comment. Nevertheless, the Roundtable purported to offer several opinions on the issues of cosmetic talc and asbestos under the guise of FDA authority. Nothing said at the Roundtable

constituted the official position of the FDA, and the FDA has taken no regulatory or enforcement action in connection with it.

13. Each of these legislative and regulatory events occurred after J&J discontinued manufacturing and selling talc-based cosmetic powder products in the United States in 2020 and after it announced the cessation of such sales globally. Moreover, the Proposed Rule was never finalized or implemented.

14. On information and belief, DOBS participates in or coordinates with professional, industry, and advocacy organizations focused on alleged talc safety issues. On information and belief, through these affiliations, DOBS or organizations with which it is associated may have leveraged industry conferences, submitted or supported comments during federal rulemaking proceedings, supported scientific research and publications favorable to plaintiffs' litigation theories, and coordinated public advocacy campaigns to advance positions favorable to DOBS's litigation strategy and to shape the regulatory and scientific discourse surrounding talc-based cosmetic products in a manner that benefits DOBS and its clients at trial.

15. On information and belief, DOBS, directly or through intermediaries, third-party organizations, and coordinated efforts with other plaintiffs' firms at the federal, state, and local levels, has sought to influence regulatory agencies to classify talc-based cosmetic products, including J&J's products, as carcinogenic, to tighten restrictions on the use of cosmetic talc, and to generate adverse regulatory findings that could be deployed at trial to benefit its litigation strategy against Plaintiff. On information and belief, these efforts include direct and indirect communications with FDA officials and staff regarding the Proposed Rule; participation in or coordination with organizations that submitted public comments on the Proposed Rule; efforts to place sympathetic experts on the Roundtable; and advocacy directed at members of Congress and

their staffs in connection with MoCRA and the Consolidated Appropriations Act, 2023. DOBS's regulatory advocacy is not incidental to its litigation practice; rather, it is a deliberate strategy to create a favorable regulatory environment that can be exploited in the courtroom.

**COUNT I – PURE BILL OF DISCOVERY**

16. A pure bill of discovery is an equitable remedy which "lies to obtain the disclosure of facts within the defendant's knowledge, or deeds or writings or other things in his custody, in aid of the prosecution or defense of an action pending or about to be commenced in some other court." *Publix Supermarkets, Inc. v. Frazier*, 696 So. 2d 1369, 1370 (Fla. 4th DCA 1997); *see Lewis v. Weaver*, 969 So. 2d 586, 587 (Fla. 4th DCA 2007) ("a true bill of discovery . . . allow[s] the injured party to ascertain whether a lawsuit may properly be asserted and under what theory or theories[;]" however "[t]here must of course be some basis for targeting a particular defendant…."); *see Vorbeck v. Betancourt*, 107 So. 3d 1142, 1145 (Fla. 3d DCA 2012) (The purpose of a pure bill is "to identify potential defendants and theories of liability and to obtain information necessary for meeting a condition precedent to filing suit.").

17. To establish entitlement to a pure bill of discovery, a plaintiff must allege "(1) the nature and contents of documents or other matters in defendant's possession or control, as to which discovery is [sought], (2) the matter or controversy to which the requested discovery relates, (3) the interest of each party in the subject of the inquiry, (4) [plaintiff's] right to have the requested relief, (5) [plaintiff's] title and interest, as well as [its] relationship to the discovery claimed, and (6) that the requested discovery is material and necessary to maintain [plaintiff's] claims in the prospective litigation." *Payne v. Beverly*, 958 So. 2d 1112, 1114 (Fla. 5th DCA 2007); *see also First Nat'l Bank of Mia. v. Dade-Broward Co.*, 171 So. 510, 511 (Fla. 1936). In addition, the plaintiff must show that "the evidence sought by discovery is essential to plaintiff['s] cause of

action and cannot be otherwise procured." *Fidelity & Deposit Co. of Md. v. Cone*, 179 So. 685, 688 (Fla. 1938). As set forth below, each element is satisfied.

18. **Nature and contents of the matters sought.** Upon information and belief, DOBS (or one or more others with whom DOBS has coordinated or from whom DOBS has obtained related information) has been actively engaged in communications with federal regulatory agencies and in lobbying efforts directly impacting the current legislative circumstances surrounding talc-based cosmetics and consumer products. Upon information and belief, DOBS possesses documents and information relating to such communications, lobbying activities, and coordination efforts concerning the regulation of talc in cosmetics and consumer products, including records of communications with HHS, the FDA, and the Executive Branch of the U.S. Government regarding: (a) the Consolidated Appropriations Act, 2023 (H.R. 2617; Pub. L. No. 117-328); (b) MoCRA; (c) the Proposed Rule and its withdrawal; and (d) the Roundtable. Upon information and belief, DOBS further possesses documents and records reflecting its efforts to influence, participate in, or respond to European health agencies' assessments of a potential ban on talc.

19. Upon information and belief, DOBS also possesses records of coordination with trade organizations, advocacy groups, lobbying organizations, and other third parties regarding these regulatory matters, as well as records of payments made to experts, consultants, and scientists in connection with regulatory and lobbying efforts relating to talc used in cosmetics and consumer goods. These documents and records concern DOBS's own conduct and relationships and are within DOBS's possession, custody, or control. Plaintiff therefore brings this action to compel DOBS to produce these documents and to identify such regulatory communications and lobbying efforts.

20. **The matter or controversy to which the discovery relates.** The discovery sought relates directly to talc personal injury litigation in which DOBS represents plaintiffs against J&J in multiple jurisdictions and has used coordinated lobbying activities to directly advance litigation goals.

21. In the South Carolina Litigation, plaintiffs represented by DOBS have sought and obtained discovery from J&J concerning the company's lobbying activities, regulatory communications, and engagement with government agencies regarding recent cosmetics regulation. While Plaintiff took the position that such discovery was protected by various privileges and prejudicial and harassing in any event, DOBS pressed forward on its theory of relevance, and on October 2, 2026, the South Carolina court compelled the discovery. Thus, it is DOBS itself that has made the material relevant. To the extent DOBS (or one or more others with whom DOBS has coordinated or from whom DOBS has obtained related information) has engaged in lobbying, coordination with third-party organizations, or efforts to influence those same regulatory matters, those activities bear directly on both the discovery DOBS has obtained in the South Carolina Litigation and how DOBS will attempt to use that discovery in the Florida Litigation.

22. **The interest of each party.** Plaintiff's interest in this action is to obtain discovery necessary to present a complete and fair defense in talc litigation brought against it by DOBS's clients in Florida and elsewhere by presenting the full scope of lobbying activity by all interested parties, including DOBS, to the jury. DOBS's interest lies in its role as counsel to the claimants in that litigation and in the documents and information within its possession concerning its own regulatory advocacy – whether directly or through third parties. Plaintiff is a defendant in litigation pending across the country relating to allegations that individual claimants developed various

cancers due to their use of J&J talc-based cosmetic products allegedly contaminated with asbestos. DOBS serves as counsel for individual claimants in nearly one hundred such cases, including cases pending in South Carolina and Florida. If the individual claimants in either the South Carolina Litigation or the Florida Litigation intend to present Plaintiff's regulatory and lobbying activities to the jury as evidence of improper conduct, Plaintiff must be afforded the opportunity to show that DOBS itself engaged in similar advocacy directed at the same regulatory bodies and legislative actions, either directly or through funding and coordination with intermediaries and third-party organizations. Without this discovery, Plaintiff would be unable to demonstrate to the jury that lobbying on talc-related regulatory matters was a common and legitimate activity undertaken by multiple stakeholders, including the claimants' own counsel.

23. **Plaintiff's right to the requested relief.** Plaintiff's right to the requested relief derives from its due process right to present a fair and complete defense in pending talc and asbestos litigation brought against it by DOBS's clients, including the South Carolina Litigation and the Florida Litigation. The discovery sought cannot effectively be obtained through the procedural mechanisms available in those proceedings. DOBS is not a party to the underlying actions, so party discovery tools – interrogatories, requests for production, and requests for admission – cannot be directed to it. Discovery directed to the individual plaintiffs would not reach the information sought, because that information concerns DOBS's own regulatory and lobbying activity, which is not known to or possessed by the individual plaintiffs in any practical sense. A pure bill of discovery permits a single court to resolve, in one proceeding, Plaintiff's entitlement to narrowly defined, factual information concerning DOBS's own conduct.

24. **Plaintiff's title and interest and its relationship to the discovery.** Plaintiff's title and interest in the discovery claimed likewise derive from its right to present a complete defense

in the South Carolina Litigation, the Florida Litigation, and other talc litigation brought by DOBS's clients. Plaintiff has been subjected to extensive discovery demands by DOBS, including duplicative corporate representative deposition notices seeking testimony and documents on regulatory lobbying, expert compensation, and topics already exhaustively covered in prior depositions. The discovery sought in this matter will reveal whether DOBS itself has engaged in or benefited from the same type of lobbying, regulatory advocacy, and coordination with federal agencies that DOBS contends constitutes improper conduct by Plaintiff, thus enabling the jury to fairly evaluate the significance and context of any such activities.

25. **Materiality and necessity.** The requested discovery is material and necessary to Plaintiff's defense in the pending South Carolina Litigation and Florida Litigation. The evident purpose of DOBS's repeated requests for discovery relating to Plaintiff's regulatory activities and lobbying efforts is to portray Plaintiff before the jury as having acted improperly or sought to suppress regulatory oversight of talc-based cosmetics or consumer products. The discovery sought here is material to specific anticipated trial issues, including: (a) rebutting any argument that the lobbied regulatory agencies independently validate plaintiffs' causation theories, by establishing the provenance and sponsorship of the regulatory initiatives plaintiffs intend to rely upon; (b) testing the bias and compensation of experts who have participated both in regulatory advocacy and as retained litigation experts; and (c) providing necessary context if plaintiffs affirmatively characterize J&J's government contacts as evidence of wrongdoing. Absent this discovery, the jury would receive a distorted and incomplete account of the regulatory landscape, hearing only of Plaintiff's engagement while remaining unaware of any advocacy by opposing counsel directed at the very same governmental bodies.

26. **The discovery cannot be otherwise procured.** The discovery is not practically available through other means. DOBS's communications with regulators and third parties regarding the various regulatory matters described above, records of payments to experts and consultants in connection with regulatory advocacy, and records of coordination with third-party organizations are not public records and are not available through any other readily accessible source. The individual plaintiffs in the pending talc cases are not practical vehicles through which to obtain this discovery. The information concerns DOBS's own conduct and relationships, is not known to or possessed by the individual plaintiffs in any practical sense, and cannot reasonably be obtained from them. The individual plaintiffs' claims concern their alleged injuries from the use of talc-based cosmetic powder products, not the regulatory advocacy and lobbying activities of their counsel. Because DOBS appears in the pending talc litigation as counsel rather than as a party, ordinary discovery in those cases does not provide an effective mechanism to obtain the information sought. A pure bill of discovery is the only adequate and appropriate remedy to secure evidence that is critical to Plaintiff's defense.

27. A single proceeding is also necessary because the same information bears on every talc case DOBS is prosecuting against J&J. DOBS serves as counsel for claimants in nearly one hundred such cases across multiple jurisdictions. Pursuing non-party subpoenas to DOBS case by case would require serial, duplicative proceedings over the same records and risk inconsistent rulings on identical requests. Moreover, the relevance of DOBS's regulatory and lobbying activity does not arise from any individual plaintiff's claim; it arises from DOBS's strategy across its docket, as reflected in the identical lobbying and regulatory discovery DOBS has sought and obtained from J&J. A trial court presiding over a single personal injury action is poorly positioned to evaluate that cross-docket relevance and may view counsel's regulatory activity as collateral to

the individual claim before it. A pure bill of discovery allows one court to evaluate the relevance of, and Plaintiff's entitlement to, this discovery in its proper context and to issue a single ruling governing it.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

1. compel DOBS, with respect to nonprivileged documents and information within its possession, custody, or control, and for the period from January 1, 2018 to the present:
    a. to produce all documents and communications between (i) DOBS, any other plaintiffs' firm in talcum powder litigation, or any third party acting on behalf of or for the benefit of any of them; and (ii) HHS, FDA, the Executive Branch of the U.S. Government, any trade organization, trade association, advocacy group, lobbying organization, non-profit organization, or other third party regarding the Consolidated Appropriations Act, 2023 (H.R. 2617; Pub. L. No. 117-328); MoCRA; the Proposed Rule and its withdrawal; or the Roundtable, including all documents reflecting the fact or content of such communications;
    b. to identify any and all efforts by DOBS, any other plaintiffs' firm in talcum powder litigation, or any third party acting on behalf of or for the benefit of any of them to lobby, influence, advocate for or against, or otherwise attempt to affect legislation, regulation, rulemaking, agency action, or proposals relating to talc used in cosmetics or consumer products, including but not limited to efforts directed at federal, state, or local government officials, legislators, regulators, or agencies, or any non-profit or standards-setting organizations;
    c. to identify any and all payments, fees, contributions, donations, or other transfers of value made by or on behalf of DOBS, any other plaintiffs' firm in talcum powder

litigation, or any third party acting on behalf of or for the benefit of any of them, to any third-party organization, lobbying group, advocacy organization, trade association, non-profit organization, political action committee, or other entity in connection with lobbying efforts, legislative activity, regulatory advocacy, or public policy initiatives relating to talc used in cosmetics or consumer products;

d. to identify any and all payments, fees, contributions, donations, or other transfers of value made by or on behalf of DOBS, any other plaintiffs' firm in talcum powder litigation, or any third party acting on behalf of or for the benefit of any of them to any expert, consultant, scientist, or other individual in connection with regulatory, legislative, or lobbying efforts relating to talc, asbestos, cosmetics, or consumer product safety, as distinct from payments for litigation consulting or testimony;

e. to identify any and all efforts by DOBS, any other plaintiffs' firm in talcum powder litigation, or any third party acting on behalf of or for the benefit of any of them, to influence, participate in, or communicate regarding European health agencies' assessments of a potential ban on talc;

f. to produce all documents and communications with any member of Congress, Congressional staff, legislative aide, or government official regarding talc, asbestos, cosmetics regulation, or consumer product safety, including but not limited to any effort to influence legislation, regulation, or governmental policy;

g. to produce all documents and communications with any media organization, journalist, public relations firm, or communications consultant regarding lobbying efforts, regulatory advocacy, or public policy initiatives relating to talc, asbestos, cosmetics, or consumer product safety;

2. award Plaintiff its taxable costs; and

3. grant such other and further relief as this Court deems just and proper.

Dated: October 5, 2026

/s/ *Joshua T. Fordin*
Joshua T. Fordin
Florida Bar No. 125219
KIRKLAND & ELLIS LLP
830 Brickell Plaza
Miami, FL 33131
(305) 432-5684
josh.fordin@kirkland.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 5, 2026, the foregoing was filed electronically using the Court's electronic filing system, which will send notice and a copy of this filing to all counsel of record listed in the Florida Courts E-Filing Portal.

/s/ *Joshua T. Fordin*
Joshua T. Fordin